**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
GUANGLEI JIAO,
NAN YU,
RUIJI ZHAI, and
YANJUN LI,
*on behalf of themselves and others similarly situated,*
                                        Plaintiffs,

                    v.

CHULAIZHADAO INC,
                                        Defendant.
---------------------------------------------------------------x

Case No. 21-cv-05002

29 U.S.C. § 216(B) COLLECTIVE
ACTION & FED. R. CIV. P. 23
CLASS ACTION

JURY TRIAL DEMANDED

**COMPLAINT**

       Plaintiffs GUANGLEI JIAO (hereinafter "Jiao"), NAN YU (hereinafter "Yu"), RUIJI ZHAI (hereinafter "Zhai"), and YANJUN LIN  (hereinafter "Li") (collectively hereinafter "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Troy Law, PLLC, hereby bring this complaint against Defendant CHULAIZHADAO INC (hereinafter the "Defendant"), and allege as follows:

## INTRODUCTION

1.    This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendant for alleged violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq.* and of the New York Labor Law ("NYLL"), N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*, arising from Defendant's various willful and unlawful employment policies, patterns and/or practices.

2.    Upon information and belief, Defendant is the successor of Plaintiffs' employer, Shang Shang Qian Inc, which in its operation of a restaurant known as "Shang Shang Qian" located at 36-34 Union Street, Flushing, NY 11354 (hereinafter "Shang Shang Qian"), has willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay its employees, including Plaintiffs, minimum wage, and overtime

compensation for all hours worked over forty (40) each workweek.

3.      Shang Shang Qian Inc, its owners, and its principal operators, including Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan a/k/a Ricky Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou, willfully failed to record all of the time that Plaintiffs and similarly situated employees work or worked, including all work done in excess of forty hours each week.

4.      Plaintiffs sued Shang Shang Qian Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou for, *inter alia*, their unpaid wages on October 9, 2018. That lawsuit, styled *Jiao v. Shang Shang Qian Inc*, No. 18-cv-05624 (E.D.N.Y.) is ongoing.

5.      More than a year after the commencement of *Jiao v. Shang Shang Qian Inc*, on or about November 1, 2019, Shang Shang Qian Inc and Zhaorui Fan terminated their lease of Shang Shang Qian's premises, and upon information and belief transferred the assets of Shang Shang Qian Inc, including but not limited to its kitchen equipment and its telephone number, to Defendant and Songyue Jin, a shareholder in Defendant, for upon information and belief no consideration.

6.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendant: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) unlawfully retained tips, (4) liquidated damages, and (5) attorney fees and costs.

7.      Plaintiffs further allege pursuant to NYLL. and 12 New York Codes, Rules and Regulations §§ 146 (the "Wage Order") that they are entitled to recover from the Defendant: (1) unpaid wages, (2) unpaid minimum wages, (3) unpaid overtime wages, (4) unpaid spread of time wages, (5) unlawfully retained tips, (6) liquidated damages, (7) penalties for nonprovision of wage notices, (8) penalties for nonprovision of wage statements, (9) prejudgment and postjudgment interest, and (10) attorney fees and costs.

## JURISDICTION AND VENUE

8.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C.

§ 216(b) and 28 U.S.C. § 1331.

9.      This Court has jurisdiction over state law claims asserted here pursuant to the Class Action

Fairness Act, 28 U.S.C. § 1332(d)(2), and has supplemental jurisdiction over the New York Labor

Law claims pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and

(c), because Defendant conducts business in this District, and some of the acts and omissions

giving rise to the claims herein alleged took place in this District.

11.     Plaintiffs are pursuing claims under the FLSA and NYLL in the case *Jiao v. Shang Shang*

*Qian Inc*, No. 18-cv-05624 (E.D.N.Y.), proceeding in this Court, against Shang Shang Qian Inc,

Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a

Denise Zou.

## PLAINTIFFS

12.     Jiao was employed by Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui

Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou to work as a so-called "fry wok"

(a kind of sauté cook) and ingredient sorter at Shang Shang Qian from on or about May 31, 2017

through on or about September 21, 2018.

13.     Yu was employed by Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan,

Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou to work as a barbecue assistant at

Shang Shang Qian from on or about September 6, 2016 through on or about September 21, 2018.

14.     Zhai was employed by Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui

Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou to work as a barbecue assistant

and miscellaneous kitchen worker at Shang Shang Qian from on or about June 1, 2017 through on

or about September 21, 2018.

15.     Li was employed by Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou to work as a waitress, cashier, and cleaner at Shaang Shang Qian from on or about June 2, 2016 through on or about September 21, 2018.

## DEFENDANT

16.     Defendant is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business of 36-34 Union Street, Flushing, NY 11354, where it operates a restaurant known as "Chu Lai Zha Dao."

17.     Defendant was formed on November 7, 2019, upon information and belief for the purpose of receiving Shang Shang Qian Inc's assets and to continue operating a restaurant out of its premises.

18.     Defendant purchases and sells, and its employees handle, goods moved in interstate or international commerce, including but not limited to rice, soybeans, lamb, beef, fish, and shellfish; alcoholic and soft beverages (including "Beibingyang," a carbonated beverage imported from China); detergents, disinfectants, and other cleaning supplies.

19.     Upon information and belief, Defendant has in excess of $500,000.00 gross annual revenue.

## THIRD PARTIES

20.     Shang Shang Qian Inc is a domestic business corporation organized under the laws of the State of New York with a registered address at 36-34 Union Street, Flushing, NY 11354, where it operated Shang Shang Qian until about November 1, 2019.

21.     Upon information and belief, Shang Shang Qian Inc currently possesses no assets, does no business, and takes in no income.

22.     However, Shang Shang Qian Inc continues to hold the liquor license and food service

preparation license for the premises at 36-34 Union Street, Flushing, NY 11354.

23.     Defendant uses Shang Shang Qian Inc's liquor license. Shang Shang Qian Inc last renewed its liquor license on October 1, 2019, approximately one month prior to the transfer of its assets to Defendant. That license expires on September 30, 2021. Defendant has not been granted and upon information and belief has not applied for a liquor license of its own. Chu Lai Zha Dao continues to sell liquor under that license. Zhaorui Fan a/k/a Ricky Fan is the named principal of the license.

24.     Up until at least August 31, 2020, and upon information and belief since then up to the present, Defendant has used Shang Shang Qian Inc's food service establishment (general) license. Shang Shang Qian Inc renewed its license on or before August 31, 2019, approximately two months prior to the transfer of its assets to Defendant. The license thus renewed lasted until August 31, 2020. The New York State Department of Health and Mental Hygiene, as of this writing, records that license as "active" without listing a license subsequent to the license that expired on August 31, 2020; therefore upon information and belief, the license has again been renewed and should last until August 31, 2021. Defendant has not been granted or upon information and belief applied for a food service establishment (general) license of its own. Therefore, upon information and belief, Defendant used Shang Shang Qian Inc's food service establishment (general) license until at least August 31, 2020 and possibly up to the present day.

25.     Until about November 1, 2019, Shang Shang Qian Inc, Yuan Yuan Wu a/k/a Andy Wu, and Zhaorui Fan a/k/a Ricky Fan were named tenants on the lease of Shang Shang Qian's premises.

26.     During Plaintiffs' employment at Shang Shang Qian, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan a/k/a Ricky Fan, and Dan Wu a/k/a Stephy Wu distributed pay to employees and kept records of the pay thus distributed.

27.     Zhaorui Fan a/k/a Ricky Fan hired each of the Plaintiffs to work at Shang Shang Qian.

28.    Zhaorui Fan a/k/a Ricky Fan continued to work at Chu Lai Zha Dao as a manager, host, and cashier after Defendant took over the business from Shang Shang Qian Inc.

29.    Upon information and belief, Zhaorui Fan a/k/a Ricky Fan is a part-owner of Defendant. Songyue Jin, the owner of Defendant, works at Chu Lai Zha Dao as a manager, host, and cashier, in the same position as Zhaorui Fan a/k/a Ricky Fan. When Zhaorui Fan a/k/a Ricky Fan is working, Songyue Jin has a day off, and vice versa.

30.    Dan Wu a/k/a Stephy Wu and Meiling Zou a/k/a Denise Zou each hired employees other than the Plaintiffs to work at Shang Shang Qian.

## STATEMENT OF FACTS

### *Defendant Is a Successor to Shang Shang Qian Inc*

31.    Defendant had actual notice of *Jiao v. Shang Shang Qian Inc* at the time of the asset transfer. That lawsuit was filed more than a year before Shang Shang Qian gave way to Chu Lai Zha Dao. Zhaorui Fan a/k/a Ricky Fan is a defendant in that lawsuit and a current manager at Chu Lai Zha Dao and upon information and belief a part-owner of Defendant.

32.    Shang Shang Qian Inc is unable to provide Plaintiffs with relief. It has failed to obtain a lawyer to represent it in *Jiao v. Shang Shang Qian Inc*., giving as a reason lack of assets or income with which to pay a lawyer.

33.    Additionally, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou have each petitioned for bankruptcy protection.

34.    Shang Shang Qian gave way to Chu Lai Zha Dao in about November 2019 with no interruption in the operation of the business. The business did cease operating from about March 20, 2020 through about June 2020 due not to the change in ownership but due to the COVID-19 pandemic and attendant stay-at-home orders.

35.    Chu Lai Zha Dao operates out of the same premises as Shang Shang Qian.

36.    Chu Lai Zha Dao uses substantially the same workforce as Shang Shang Qian had at the time of the changeover, including but not limited to Zhaorui Fan a/k/a Ricky Fan.

37.    Chu Lai Zha Dao uses Shang Shang Qian's old equipment to produce substantially the same menu as Shang Shang Qian, consisting of Japanese sushi and Sichuan barbecued meats.

38.    At all relevant times, the work performed by Plaintiffs was directly essential to the operation of Shang Shang Qian.

39.    Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou were at all relevant times aware of the wage payment and notice requirements of the FLSA and NYLL, and knew that noncompliance with the same would financially injure their employees, including Plaintiffs.

40.    Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou failed to post notices to employees of their rights to minimum wage, overtime, spread of time, and other rights under the FLSA and NYLL, as required by FLSA's implementing regulations and the Wage Order.

41.    Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou failed to keep and maintain records of Plaintiffs' time worked and wages paid for the periods required by the FLSA, its implementing regulations, the NYLL, and the Wage Order, upon information and belief in an effort to mitigate their liability for wage violations.

42.    Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou injured Plaintiffs and their other employees knowingly, intentionally and willfully in the manner described below.

### *GUANGLEI JIAO*

43.    Jiao was employed by Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui

Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou to work as a so-called "fry wok" (a kind of sauté cook) and ingredient sorter at Shang Shang Qian from on or about May 31, 2017 through on or about September 21, 2018.

44.    Jiao was not given a written notice of his wage rate, compliant with Section 195.1 of the NYLL or otherwise, at his time of hire or at any other time during his employment.

45.    From on or about May 31, 2017 through on or about January 22, 2018, Jiao regularly worked 84 hours per week: he was scheduled to work from 15:00 hours to 02:00 hours the next day, seven days per week, and every day had to stay an additional hour beyond his scheduled quitting time.

46.    From on or about January 23, 2018 through on or about September 21, 2018, Jiao regularly worked 84 hours per week: he was scheduled to work from 16:00 hours to 03:00 hours the next day, seven days per week, and every day had to stay an additional hour beyond his scheduled quitting time.

47.    Throughout his employment, Jiao did not have any fixed breaks during the working day. He ate lunch and dinner when he could, and was only able to take about 10 minutes apiece before having to return to work.

48.    From on or about May 31, 2017 through on or about August 31, 2017, Jiao was paid a salary of $3,200.00 per month.

49.    From on or about September 1, 2017 through on or about September 21, 2018, Jiao was promised $3,300.00 per month, and he was paid this amount through on or about August 31, 2018.

50.    However, for on or about September 1 through 21, 2018, Jiao was paid only $1,700.00, because he worked only 19 days rather than the 30 days in September.

51.    Because his salary amounted to about $738.46 per week before September 2017, and to

about $761.54 thereafter, and because it was subject to deduction if he worked fewer days than there were in the month, and because he was a line worker whose primary duties were cooking dishes and sorting ingredients, Jiao was not exempt from receiving overtime.

52.      However, Jiao's monthly salary did not include pay for hours worked in a week in excess of 40, and did not include pay at time-and-a-half for such hours.

53.      Jiao's monthly salary did not include an extra hour's pay for each day he worked a spread of time greater than 10 hours.

54.      Throughout his employment, Jiao was not furnished with wage statements, compliant with Section 195.3 of the NYLL or otherwise, along with each payment of wages.

### RUIJI ZHAI

55.      Zhai was employed by Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou to work as a barbecue assistant and miscellaneous kitchen worker at Shang Shang Qian from on or about June 1, 2017 through on or about September 21, 2018.

56.      Zhai was not given a written notice of his wage rate, compliant with Section 195.1 of the NYLL or otherwise, at his time of hire or at any other time during his employment.

57.      From on or about June 1, 2017 through on or about January 22, 2018, Zhai regularly worked 84 hours per week: he was scheduled to work from 15:00 hours to 02:00 hours the next day, seven days per week, and every day had to stay an additional hour beyond his scheduled quitting time.

58.      From on or about January 23, 2018 through on or about September 21, 2018, Zhai regularly worked 84 hours per week: he was scheduled to work from 16:00 hours to 03:00 hours the next day, seven days per week, and every day had to stay an additional hour beyond his scheduled quitting time.

59.     Throughout his employment, Zhai did not have any fixed breaks during the working day. He ate lunch and dinner when he could, and was only able to take about 10 minutes apiece before having to return to work.

60.     From on or about June 1, 2017 through on or about August 31, 2017, Zhai was paid a salary of $70.00 per day, amounting to $490.00 per week.

61.     From on or about September 1, 2017 through on or about September 30, 2017, Zhai was paid a salary of $80.00 per day, amounting to $560.00 per week.

62.     From on or about October 1, 2017 through on or about October 31, 2017, Zhai was paid a salary of $85.00 per day, amounting to $595.00 per week.

63.     From on or about November 1, 2017 through on or about April 30, 2018, Zhai was paid a salary of $90.00 per day, amounting to $630.00 per week.

64.     From on or about May 1, 2018 through on or about August 31, 2018, Zhai was paid a salary of $95.00 per day, amounting to $665.00 per week.

65.     From on or about September 1, 2018 through September 21, 2018, Zhai was supposed to be paid his $95.00 per day salary. He worked 19 days in that span of time and should have been paid $1,805.00, but was in fact paid only $1,700.00.

66.     Zhai was not exempt from receiving overtime.

67.     However, Zhai's daily salary did not include pay for hours worked in a week in excess of 40, and did not include pay at time-and-a-half for such hours.

68.     Zhai's daily salary did not include an extra hour's pay for each day he worked a spread of time greater than 10 hours.

69.     Throughout his employment, Zhai was not furnished with wage statements, compliant with Section 195.3 of the NYLL or otherwise, along with each payment of wages.

*YANJUN LI*

70.     Li was employed by Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou to work as a waitress, cashier, and cleaner at Shaang Shang Qian from on or about June 2, 2016 through on or about September 21, 2018.

71.     Li was not given a written notice of her wage rate or any notice of her tip credit rate, compliant with Section 195.1 of the NYLL or otherwise, at her time of hire or at any other time during her employment.

72.     From on or about June 2, 2016 through on or about July 31, 2016, Li regularly worked 65 hours per week: from 13:00 hours to 02:00 hours the next day, Mondays through Fridays.

73.     From on or about August 1, 2016 through on or about January 22, 2018, Li regularly worked 77 hours per week: from 15:00 hours to 02:00 hours the next day, seven days per week.

74.     From on or about January 23, 2018 through on or about September 21, 2018, Li regularly worked 77 hours per week: from 16:00 hours to 03:00 hours the next day, seven days per week.

75.     Throughout her employment, Li did not have any fixed breaks during the working day. She ate lunch and dinner when he could, and was only able to take about 10 minutes apiece before having to return to work—sometimes less, if a customer needed to be served before she had finished her meal.

76.     From on or about June 2, 2016 through on or about January 31, 2017, Li was paid at a rate of $8.00 per hour, including for hours she worked in excess of 40 per week.

77.     From on or about February 1, 2017 through on or about July 31, 2018, Li was paid $9.00 per hour, including for hours she worked in excess of 40 per week.

78.     From on or about August 1, 2018 through on or about September 21, 2018, Li was supposed to be paid at her $9.00 per hour rate, including for hours she worked in excess of 40 per week, but

in fact received no base pay at all.

79.     Li's employers were not entitled to take a tip credit against Li's wages, even though she received tips. Li received no notice, written or otherwise, of the amount of tip credit that would be taken against her wages to arrive at the takehome wage amounts described above.

80.     Additionally, Li had to spend more than 2 hours and more than 20 percent of her working day performing non-tipped side work, including as a cashier and cleaner.

81.     Finally, between on or about June 2, 2016 and on or about July 31, 2018, inclusive, Li was not permitted to keep any of her tips. Instead, they were retained by Shang Shang Qian Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and/or Meiling Zou a/k/a Denise Zou. Li was deprived of about $2,200.00 per month in tips.

82.     Li was not exempt from receiving overtime.

83.     However, Li only received straight-time hourly pay for her overtime hours rather than pay at time-and-a-half for such hours.

84.     Nor did Li receive an extra hour's pay for each day she worked a spread of time greater than 10 hours.

85.     Throughout her employment, Zhai was not furnished with wage statements, compliant with Section 195.3 of the NYLL or otherwise, along with each payment of wages.

     *NAN YU*

86.     Yu was employed by Shang Shang Qian, Inc, Yuan Yuan Wu a/k/a Andy Wu, Zhaorui Fan, Dan Wu a/k/a Stephy Wu, and Meiling Zou a/k/a Denise Zou to work as a barbecue assistant at Shang Shang Qian from on or about September 6, 2016 through on or about September 21, 2018.

87.     Yu was not given a written notice of his wage rate, compliant with Section 195.1 of the NYLL or otherwise, at his time of hire or at any other time during his employment.

88.     From on or about September 6, 2016 through on or about January 23, 2018, Yu regularly

worked 84 hours per week: he was scheduled to work from 15:00 hours to 02:00 hours the next day, seven days per week, and every day had to stay an additional hour beyond his scheduled quitting time.

89.     From on or about January 24, 2018 through on or about September 21, 2018, Yu regularly worked 84 hours per week: he was scheduled to work from 16:00 hours to 03:00 hours the next day, seven days per week, and every day had to stay an additional hour beyond his scheduled quitting time.

90.     Throughout his employment, Yu did not have any fixed breaks during the working day. He ate lunch and dinner when he could, and was only able to take about 10 minutes apiece before having to return to work—sometimes less, if a customer placed an order before he had finished his meal.

91.     From on or about September 6, 2016 through on or about October 31, 2016, Yu was paid a salary of $70.00 per day, amounting to $490.00 per week.

92.     From on or about November 1, 2016 through on or about December 31, 2016, Yu was paid a salary of $80.00 per day, amounting to $560.00 per week.

93.     From on or about January 1, 2017 through on or about February 28, 2017, Yu was paid a salary of $90.00 per day, amounting to $630.00 per week.

94.     From on or about March 1, 2017 through on or about May 31, 2017, Yu was paid a salary of $95.00 per day, amounting to $665.00 per week.

95.     From on or about June 1, 2017 through on or about September 30, 2017, Yu was paid a salary of $100.00 per day, amounting to $700.00 per week.

96.     From on or about October 1, 2017 through on or about May 31, 2018, Yu was paid a salary of $110.00 per day, amounting $770.00 per week.

97.    From on or about June 1, 2018 through on or about September 21, 2018, Yu was paid a salary of $120.00 per day, amounting to $840.00 per week.

98.    Yu was not exempt from receiving overtime.

99.    However, Yu's daily salary did not include pay for hours worked in a week in excess of 40, and did not include pay at time-and-a-half for such hours.

100.    Yu's daily salary did not include an extra hour's pay for each day he worked a spread of time greater than 10 hours.

101.    Throughout his employment, Yu was not furnished with wage statements, compliant with Section 195.3 of the NYLL or otherwise, along with each payment of wages.

## COLLECTIVE ACTION ALLEGATIONS

102.    Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendant or by Shang Shang Qian Inc for up to the last three (3) years, through entry of judgment in this case and who were not compensated at their promised hourly rate for all hours worked and at one-and-one-half times their promised work for all hours worked in excess of forty (40) hours per week.

## CLASS ACTION ALLEGATIONS

103.    Plaintiffs bring their NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure Rule 23, on behalf of all non-exempt personnel employed by Defendant or Shang Shang Qian Inc on or after the date that is six years before the filing of the Complaint in this case as defined herein.

104.    All said persons, including Plaintiff, are referred to herein as the "Class."

105.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendant. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendant's

records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### Numerosity

106.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendant, upon information and belief, there are more than forty (40) members of the class.

### Commonality

107.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.    Whether Defendant or Shang Shang Qian Inc employed Plaintiffs and the Class within the meaning of the New York law;

    b.    Whether Plaintiffs and Class members were paid all their promised wages;

    c.    Whether Plaintiffs and Class members were paid for all hours worked;

    d.    Whether Plaintiffs and Class members were paid minimum wages for all hours worked;

    e.    Whether Plaintiffs and Class members were entitled to, and paid, overtime at a rate of 1.5 times their regular hourly rates;

    f.    Whether Plaintiffs and Class members were entitled to, and paid, spread of time;

    g.    Whether those Plaintiffs and Class members who received tips had any of their tips retained;

h.      Whether Plaintiffs and Class members were furnished with wage notices compliant with Section 195.1 of the NYLL at their times of hire or thereafter;

i.      Whether Plaintiffs and Class members were furnished with wage statements compliant with Section 195.3 of the NYLL at their times of hire with each payment of wages; and

j.      At what common rate, or rates subject to common method of calculation was and is Defendant required to pay the Class members for their work.

## *Typicality*

108.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendant's enterprise-wide policies and practices affected all Class members similarly, and Defendant benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

## *Adequacy*

109.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation cases.

## *Superiority*

110.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class

members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendant. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

111.    Upon information and belief, Defendant and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### Count I.
### [Violation of New York Labor Law—Failure to Pay Wages
### Brought on behalf of Plaintiffs and the Class]

112.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

113.    At all relevant times, Plaintiffs were employed by Defendant within the meaning of New York Labor Law §§ 2 and 651.

114.    At all relevant times, Defendant had a policy and practice of refusing to pay Plaintiffs, and the Class, in full for some or all of the hours they worked.

115.    Defendant knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wages in the lawful amount for hours worked.

116.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

### Count II.
### [Violation of Fair Labor Standards Act —Failure to Pay Minimum Wages
### Brought on behalf of Plaintiffs and the Collective]

117.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

118.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs in full, and the similarly situated collective action members, for some or all of the hours they worked.

119.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

120.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### Count III.
### [Violation of New York Labor Law—Failure to Pay Minimum Wages
### Brought on behalf of Plaintiffs and the Class]

121.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

122.    At all relevant times, Plaintiffs are employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

123.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

124.    Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

125.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

### Count IV.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime
### Brought on behalf of the Plaintiffs and the Collective]

126.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

127.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives

compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

128.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

129.    Defendant's failure to pay Plaintiffs and the Collective their overtime pay violated the FLSA.

130.    At all relevant times, Defendant had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and the Collective for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

131.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

132.    Defendant willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collective's labor.

133.    Defendant knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective.

**Count V.**
**[Violation of New York Labor Law—Failure to Pay Overtime**
**Brought on behalf of Plaintiffs and the Class]**

134.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

135.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

136.    At all relevant times, Defendant had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

137.    Defendant's failure to pay Plaintiffs overtime pay violated the NYLL.

138.    Defendant's failure to pay Plaintiffs was not in good faith.

### Count VI.
### [Violation of Fair Labor Standards Act—Tip Retention
### Brought on behalf of Li and the Collective]

139.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

140.    A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

141.    The FLSA prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

142.    Retaining portions (or the entirety thereof) of the tips from tipped staff to unjustly enrich the Owner/ Operator Defendants or using portion of the tips to pay non-tipped employees is prohibited under the FLSA.

### Count VII.
### [Violation of New York Labor Law—Tip Retention
### Brought on behalf of Li and the Tipped Subclass]

143.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.\

144.    Section 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

145.    A charge purported to be a gratuity, including charges advertised to be "delivery fee" to customers, must be distributed in full as gratuities to the service employees or food service workers who provided the service.

146.    §146-2.18 provides that there shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for "service" or "food service," is a charge purported to be a gratuity.

147.    NYLL §146-2.20 provides that when tips are charged on credit cards, the employer must return to the employee the full amount of the tip charged on credit card minus the pro-rated portion of the tip taken by the credit card company.

148.    Employers are prohibited from unjustly enriching themselves by charging their employees a gratuities service fee charge which exceed the costs of converting credit card gratuities into cash.

**Count VIII.**
**[Violation of New York Labor Law—Failure to Pay Spread of Time**
**Brought on behalf of Plaintiffs and the Class]**

149.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

150.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

151.    Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

**Count IV.**
**[Violation of New York Labor Law—Failure to Provide Wage Notice**
**Brought on behalf of Plaintiffs and the Class]**

152.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

153.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

154.    Defendant intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

155.    Defendant not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

156.    Due to Defendant's violations of New York Labor Law, Plaintiffs are entitled to recover from Defendant, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

**Count V.**
**[Violation of New York Labor Law—Failure to Provide Wage Statements**
**Brought on behalf of Plaintiffs and the Class]**

157.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

158.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

159.    Defendant have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' paydays.

160.    Due to Defendant's violations of New York Labor Law, Plaintiffs are entitled to recover from Defendant, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

**JURY DEMAND**

161.    Plaintiffs demand a trial by jury on all issues of fact so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the Collective and 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)      Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendant as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of liquidated and/or punitive damages as a result of Defendant's knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)      Up to five thousand dollars ($5,000) per Plaintiff for Defendant's failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendant's failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's

wages, any allowances claimed as part of the minimum wage, and the employee's gross and net

wages for each pay day;

j)      An award of liquidated and/or punitive damages as a result of Defendant's willful

failure to overtime compensation, pursuant to New York Labor Law;

k)      An award of costs and expenses of this action together with reasonable attorneys'

and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)      The cost and disbursements of this action;

m)      An award of prejudgment and post-judgment fees;

n)      Providing that if any amounts remain unpaid upon the expiration of ninety days

following the issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL §198(4); and

o)      Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.

Dated: Flushing, New York
            September 7, 2021

                                        TROY LAW, PLLC
                                        *Attorneys for the Plaintiffs, proposed FLSA*
                                        *Collective and potential Rule 23 Class*

                                        /s/ John Troy_____
                                        John Troy (JT0481)
                                        Aaron Schweitzer (AS 6369)
                                        Tiffany Troy (Bar ID 5881735)